[Cite as *State v. Minshall*, 2024-Ohio-1035.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA5 |
| Plaintiff-Appellee, | : | |
| | | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| Thomas Minshall, | : | **RELEASED 3/18/2024** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Christopher Bazeley, Cincinnati, Ohio, for appellant.

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for appellee.

_____

Hess, J.

{¶1} Thomas Minshall appeals from a judgment of the Meigs County Court of Common Pleas convicting him, following his guilty plea, of one count of nonsupport of dependents in violation of former R.C. 2919.21(B) (now R.C. 2919.21(B)(1)(a)).[1] In his sole assignment of error, Mr. Minshall asserts that the trial court's determination of the amount of restitution is contrary to law. For the reasons which follow, we overrule the assignment of error and affirm the trial court's judgment.

---

[1] The indictment and sentencing entry describe the offense as nonsupport *or* contributing to the nonsupport of dependents. However, a violation of R.C. 2919.21(B) (both the current version and the version in effect at the time of the indictment) constitutes the offense of nonsupport of dependents. R.C. 2919.21(G)(1); 2015 H.B. No. 64.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   On December 6, 2017, Mr. Minshall was indicted on one count of non-support of dependents in violation of former R.C. 2919.21(B), a fifth-degree felony. On December 20, 2017, Mr. Minshall did not appear at the arraignment hearing, and the trial court issued a bench warrant.  On February 7, 2018, the court issued an entry stating that it appeared the sheriff had not served Mr. Minshall or brought him before the court, so the court continued the case "off docket" until such time as the sheriff served the warrant and brought Mr. Minshall before the court. On February 13, 2023, Mr. Minshall was served. On February 15, 2023, the court conducted the arraignment hearing, and Mr. Minshall pled not guilty.  In July 2023, he changed his plea to guilty. The court accepted the plea and found him guilty.

{¶3}   On September 7, 2023, the trial court conducted a restitution and sentencing hearing. The parties agreed that Mr. Minshall had to pay restitution but did not agree on the amount. The dispute centered on whether Mr. Minshall was entitled to a credit against the child support arrears in connection with a "prevailing wage check" which was addressed in court orders in domestic relations proceedings between Mr. Minshall and his former wife, Lisa Minshall.

{¶4}   Four exhibits were admitted. Exhibit 1 is a July 8, 2002 entry from the common pleas court in Case No. 01-DR-090, and the caption indicates that Ms. Minshall is the petitioner, and Mr. Minshall is the respondent. The entry states that the Ohio Department of Commerce-Division of Administration is ordered "to withhold $3,364.49 from the approximate $11,255.00 lump-sum check for Thomas Minshall and remit this

amount to the Meigs County Child Support Enforcement Agency * * *. The amount against Thomas Minshall's arrearage [sic]."

{¶5}    Exhibit 2 is a September 17, 2002 entry from the common pleas court with an incomplete case number on it of "02-DR-." The caption indicates that Ms. Minshall is the plaintiff, and Mr. Minshall is the defendant. The entry states that on August 26, 2002, the court conducted a hearing at which the parties "addressed the issue of Defendant's prevailing wage check in the amount of $11,255.57." The entry states that "Defendant shall sign his prevailing wage check, which shall be held in trust by Plaintiff's counsel," Denise L. Bunce. The entry states that "[a]fter the transfer of the check, Plaintiff's counsel shall pay Defendant $1,000.00, to be used, at his discretion, to obtain an attorney." The entry states that "Plaintiff's counsel shall also pay Plaintiff $4.079.90 [sic], which represents Defendant's child support arrearages as of August 19, 2002 in Case No. 01-DR-090." The entry further states that "Plaintiff's counsel shall maintain the remaining prevailing wage monies in her trust account until further order of this Court."

{¶6}    Exhibit 3 is a January 10, 2003 final decree of divorce from the common pleas court in Case No. 02-DR-087. The case caption indicates that Ms. Minshall is the plaintiff, and Mr. Minshall is the defendant. The decree states that the final divorce hearing occurred on December 16, 2002, that "[c]ounsel for Plaintiff advised the Court that the parties had reached an agreement on all the outstanding issues of the marriage," and that the court "adopted the same into its findings and orders, with a few minor changes as indicated" in the decree. The decree states that "[t]he court finds that the parties have $6175.62 remaining from a prevailing wage check received during the marriage." The decree states the parties agreed Ms. Minshall would receive $4,139.97—$1,430.97 for

"Defendant's child support arrears as of 12-13-02," $1909.00 for "Defendant's share of house payments," and $800.00 for "[r]epayment to Plaintiff for cost of computer." The decree states that "[t]he parties also agreed that Defendant would receive $1000.00 from the prevailing wage check, with a remainder of $1035.65." The decree further states:

> The parties agreed that Plaintiff would receive the remaining balance for Defendant's payment of future child support for the minor child. However, the Court modified their agreement, as it finds that Defendant may have a tax liability from the prevailing wage check. Therefore, the remaining monies may be paid for Defendant's child support obligation, if, after his 2002 tax return is prepared, no additional tax liability is determined. However, if Defendant does have a tax liability, the remaining money may be used to pay his taxes.

[*Id.*] The decree states that Plaintiff's counsel is "authorized to transfer $4139.97 to Plaintiff from the remaining monies in counsel's trust account, for the items listed in this Court's Findings" and "to release $1000.00 to Defendant as his share of the remaining prevailing wage monies." The court ordered Mr. Minshall to immediately prepare his 2002 tax return, claim the prevailing wage check as income, and give Plaintiff's counsel a copy of the return "to establish any tax liability based on his prevailing wage check." The court authorized Plaintiff's counsel to "transfer that amount, up to $1035.65, to the Internal Revenue Service and/or the State of Ohio, on Defendant's behalf." The decree indicates that at the time of the final divorce hearing, Ms. Minshall was still represented by Attorney Bunce, and Mr. Minshall was unrepresented.

{¶7} Exhibit 4 is copies of three checks from the Denise L. Bunce, Attorney at Law Trust Account. [Ex. 4] The first check, dated December 20, 2002, is payable to Mr. Minshall in the amount of $1,000. The "For" line on the check is blank. The second check, also dated December 20, 2002, is payable to Ms. Minshall in the amount of $3,739.97. The "For" line on the check appears to state "amt due less atty fees." The third check,

dated January 24, 2003, is payable to Mr. Minshall in the amount of $1,035.65. The "For" line on the check states "[r]emainder for taxes."

{¶8} Melissa Johnson, an employee of the Meigs County Child Support Enforcement Agency (the "agency"), testified that Mr. Minshall owed $31,049.08. Johnson testified that the agency did not receive a payment of $3,364.49, i.e., the amount ordered remitted to the agency in Exhibit 1. However, the agency's records indicated that on September 9, 2022, it received a payment of $4,079.90, i.e., the amount the court ordered Attorney Bunce to pay Ms. Minshall in Exhibit 2 for "child support arrearages as of August 19, 2002." The agency gave Mr. Minshall credit for that amount. Johnson testified that the agency's records did not reflect that $1,430.97, i.e., the amount the court authorized Attorney Bunce to transfer to Ms. Minshall in Exhibit 3 for "child support arrears as of 12-13-02," was credited to Mr. Minshall on or after January 10, 2003, i.e., the date of the decree. However, she testified that on June 25, 2003, "the custodial party" contacted the agency and "reported that she wanted to waive the arrears owed to her as of June two thousand three (2003)" so that Mr. Minshall "could get his driver's license back." Consequently, on June 26, 2003, the agency gave Mr. Minshall a $1,833.61 credit, making the arrears $0. And in July 2023, once the unpaid amount for June 2003 posted "over to the arrears," the agency gave Mr. Minshall another credit for $312.68, again making the arrears $0.

{¶9} Attorney Bunce testified that to the best of her knowledge, the $3,364.49 in arrears referenced in Exhibit 1 was included in the $4,079.90 in arrears referenced in Exhibit 2. Attorney Bunce indicated that she did not recall what happened to the portion of the prevailing wage check not addressed in the divorce decree "after the child support

office took their money." With respect to the portion of the check addressed in the divorce decree, she testified, "I got the money at some point in December, it looks like, because we wrote checks * * * within four days" of the December 16, 2002 hearing. On December 20, 2002, she gave Mr. Minshall $1,000, which she thought the decree said was for getting an attorney if needed. The same day, she gave Ms. Minshall $3,739.97. Attorney Bunce believed that she gave Ms. Minshall the additional $400 to which she was entitled under the decree at some point, but Attorney Bunce did not have a copy of a check for that amount. Attorney Bunce testified that she also gave Mr. Minshall $1,035.65 on January 24, 2003, for taxes.

{¶10} Mr. Minshall testified that the only funds he received from the prevailing wage check were $1,000.00 "for an attorney," though he "didn't get one," and "the tax money." Mr. Minshall testified that he did not know what happened to the $5,479.95 from the prevailing wage check not accounted for by the Exhibit 4 checks. He testified that he did not receive those funds.

{¶11} The trial court sentenced Mr. Minshall to five years of community control. The sentencing entry states that he is ordered to "continue to make his current monthly child support obligation as well as any arrearage payment." The entry further states that he is ordered to "pay restitution in the amount of thirty one thousand forty nine dollars and eight cents ($31,049.08) to the Department of Job and Family Services * * * as to and for child support arrearages, for which judgment is hereby granted" and ordered to make monthly payments of $517.48 over the next five years.

## II.  ASSIGNMENT OF ERROR

**{¶12}** Mr. Minshall presents one assignment of error:  "The trial court['s] determination of the amount of restitution is contrary to law."

## III.  LAW AND ANALYSIS

**{¶13}** In the sole assignment of error, Mr. Minshall contends that the trial court's determination of the amount of restitution is contrary to law.  Mr. Minshall states that "[i]n cases involving felony nonsupport of dependents, unpaid child support payments constitute an 'economic loss' suffered by the victim for which a trial court may order the defendant to pay financial sanctions pursuant to R.C. 2929.18."  However, he asserts that the $31,049.08 restitution order "is contrary to law because it is not supported by clear and competent evidence."  Specifically, he claims the trial court erred because it "declined to apply credits that were due against that balance."  Mr. Minshall asserts that he and Attorney Bunce testified that "he only received a $1,000 check and another check to cover taxes from the prevailing wadge [sic] check" and "that $5,479.95 of the prevailing wage check was unaccounted for."  He asserts that Attorney Bunce also testified that "there was an additional $400 remaining after distributions that also was not accounted for."  And he asserts that "an employee of the Meigs County Child Support Agency conceded that a credit of $1,439.97 against child support due to [him] at the time of his divorce was not applied in its records."  Therefore, Mr. Minshall asserts that he "is entitled to additional credits of at least $5,479.95 and $1,439.97 against the restitution amount."

**{¶14}** R.C. 2953.08(A)(4) authorizes a defendant who is convicted of or pleads guilty to a felony to appeal as a matter of right the sentence imposed on the defendant on the ground that it is "contrary to law."  R.C. 2953.08(G)(2) states:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶15} "An order of restitution imposed by the sentencing court on an offender for a felony is part of the sentence * * *." *State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444, syllabus. The amount of restitution is "based on the victim's economic loss" and "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.18(A)(1). " 'Economic loss' means any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense * * *." R.C. 2929.01(L). The sentencing court "shall determine the amount of full restitution by a preponderance of the evidence." R.C. 2929.18(A)(1).

{¶16} Mr. Minshall's contention that the $31,049.08 restitution order is contrary to law because he is entitled to credits totaling $6,919.92 of the $11,255.57 prevailing wage check is not well taken. The evidence indicates that in July 2002, the court ordered that $3,364.49 of the prevailing wage check be remitted to the agency for child support arrears. However, this payment was not made.

{¶17} Then in September 2002, the court ordered Attorney Bunce to (1) pay Ms. Minshall $4,079.90 of the check for child support arrears as of August 19, 2002 (which would have encompassed the $3,364.49 in arrears referenced in the July 2002 entry), and (2) pay Mr. Minshall $1,000.00, "to be used, at his discretion, to obtain an attorney." Attorney Bunce did not testify that she made the $4,079.90 payment. However, there is evidence it was made because Johnson testified that the agency's records indicated that on September 9, 2022, it received a payment of $4,079.90, and the agency gave Mr. Minshall credit for that amount. Attorney Bunce also did not testify that she made the $1,000 payment the court ordered in September 2002. Mr. Minshall did admit that he received $1,000 to hire an attorney, but he and Attorney Bunce suggested that payment was for the $1,000 owed to him under the divorce decree, not the $1,000 owed to him under the September 2002 entry. Nonetheless, the divorce decree suggests the $1,000 payment ordered in September 2002 was in fact made. The decree indicates that the parties reached an agreement on all outstanding issues of the marriage, including the distribution of the remainder of the prevailing wage check, which the court found was $6,175.62. If the $4,079.90 and $1,000 payments ordered in September 2002 were made, $5,079.90 of the check would have been spent, and $6,175.67 would have remained—five cents more than the decree stated remained. The decree gives no

indication that Mr. Minshall complained that he did not receive his $1,000 payment or disputed the $6,175.62 figure.

{¶18} Even if Mr. Minshall never received the $1,000 payment ordered in September 2002, we fail to see why he would be entitled to a credit for that amount in this case. Under the September 2002 entry, Attorney Bunce was supposed to hold the funds from the prevailing wage check in trust, and Attorney Bunce was supposed to pay Mr. Minshall the $1,000. Attorney Bunce is not the victim in this case, and there is no evidence that instead of giving Mr. Minshall the $1,000, she gave it to Ms. Minshall, either directly or indirectly as a credit against her attorney fees.

{¶19} With respect to the $6,175.62 addressed in the divorce decree, Exhibit 4 indicates that Mr. Minshall received $2,035.65 of those funds and that Ms. Minshall received $3,739.97. Although Ms. Minshall was to receive an additional $400 under the decree, the "For" line on the check to her suggests that money went toward her attorney fees. Even if the $400 was unaccounted for, the only portion of the money Ms. Minshall was awarded in the divorce decree for child support arrears was $1,430.97 for the arrears as of December 13, 2002. Although Mr. Minshall did not get a credit from the agency for that exact amount, the agency credited him $1,833.61 in June 2003 and $312.68 in July 2023 at the request of Ms. Minshall, which made the arrears balance $0. Therefore, he effectively got credit for the $1,430.97 and for the five cents from the prevailing wage check unaccounted for by the court orders in evidence.

{¶20} For the foregoing reasons, we do not clearly and convincingly find that the restitution order is contrary to law based on the trial court's failure to give Mr. Minshall the

credits to which he claims entitlement.  Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**